# No. 20-_____

## In the United States Court of Appeals
## For the Third Circuit

MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL, and DESIRE EVANS, on behalf of themselves and all others similarly situated,

*Plaintiffs-Respondents*,

v.

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,

*Defendant-Petitioner.*

On Petition for Permission to Appeal from the United States District Court for the Eastern District of Pennsylvania, No. 2:18-cv-05629-JDW (Wolson, J.)

## PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F)

MORGAN, LEWIS & BOCKIUS LLP
    Brian W. Shaffer
    Matthew D. Klayman
1701 Market St.
Philadelphia, PA 19103
(215) 963-5000

MORGAN, LEWIS & BOCKIUS LLP
    William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188

***Counsel for Defendant-Petitioner***

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Third Circuit Local Appellate Rule 26.1, Defendant–Petitioner Educational Commission for Foreign Medical Graduates makes the following disclosure:

(1)    For nongovernmental corporate parties, please list all parent corporations:

*Educational Commission for Foreign Medical Graduates has no parent corporation.*

(2)    For nongovernmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock:

*No publicly held corporation owns more than 10% of Educational Commission for Foreign Medical Graduates' stock.*

(3)    If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

*At this time, Educational Commission for Foreign Medical Graduates believes that AIG may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy a possible judgment in the action.*

i

4)    In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: (1) the debtor, if not identified in the case caption; (2) the members of the creditors' committee or the top 20 unsecured creditors; and, (3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

*Not applicable.*

Dated:  April 6, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: *William Peterson*

William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002

Brian W. Shaffer
Matthew D. Klayman
1701 Market St.
Philadelphia, PA 19103

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement ...............................................................i

Table of Contents ................................................................ iii

Table of Authorities ................................................................v

Introduction ................................................................1

Factual Background ................................................................3

Questions Presented ................................................................8

Relief Sought................................................................9

Reasons for Granting the Petition................................................................10

I.      Review Would Facilitate Development of the Law on Class
        Certification Under Rule 23(c)(4). ................................................................10

        A.      This Court should clarify the relationship between the *Gates*
                factors and Rule 23(b). ................................................................12

        B.      This Court should correct the district court's misapplication
                of *Gates*. ................................................................14

II.     This Court Should Grant Interlocutory Review Because The District
        Court's Class Certification Determination Was Erroneous. ................................................................17

        A.      The district court erred in analyzing variations in state law. ................................................................18

        B.      The district court erred in analyzing Rule 23(a). ................................................................21

III.    Class Certification Places Inordinate Pressure on ECFMG to Settle................................................................23

Conclusion & Prayer for Relief ..................................................................25

Certificate of Service .................................................................................26

Certificate of Compliance with Rule 32(a)...............................................27

Attachment

## TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Alban v. Fiels*,
    61 A.3d 867 (Md. 2013) ...................................................................... 19

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .......................................................................... 23

*Bordentown v. FERC*,
    903 F.3d 234 (3d Cir. 2018) ............................................................. 17

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ...................................................................... 12

*Gates v. Rohm & Haas Co.*,
    655 F.3d 255 (3d Cir. 2011) ....................................................... passim

*Grandalski v. Quest Diagnostics Inc.*,
    767 F.3d 175 (3d Cir. 2014) ............................................................. 18

*Hammersmith v. TIG Ins. Co.*,
    480 F.3d 220 (3d Cir. 2007) ............................................................. 20

*Hedgepeth v. Whitman Walker Clinic*,
    22 A.3d 789 (D.C. 2011) ................................................................... 20

*Hershman v. Muhlenberg College*,
    17 F. Supp. 3d 454 (E.D. Pa. 2014) .................................................. 20

*In re Sch. Asbestos Litig.*,
    789 F.2d 996 (3d Cir. 1986) ....................................................... 18, 20

*In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*,
    No. 13-md-2445, 2019 WL 4735520 (E.D. Pa. Sept. 27, 2019) ...... 13

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ........................................................ 18

*Luppino v. Mercedes Benz USA*,
    718 F. App'x 143 (3d Cir. 2017) ................................................... 1, 12

*Microsoft Corp. v. Baker*,
    137 S. Ct. 1702 (2017) ...................................................................................10

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001), *as amended* (Oct. 16, 2001) ..........................23, 24

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................20

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013) .......................................................................10, 17

*Romero v. Allstate Ins. Co.*,
    52 F. Supp. 3d 715, 724 (E.D. Pa. 2014) ......................................................13

*Slade v. Progressive Sec. Ins. Co.*,
    856 F. 3d 408 (5th Cir. 2017) .........................................................................22

*Spence v. Bd. of Ed. of Christina Sch. Dist.*,
    806 F.2d 1198 (3d Cir. 1986) .....................................................................1, 15

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008) ........................................................................................24

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) (en banc) ..........................................................18

*Walsh v. Ford Motor Co.*,
    807 F.2d 1000 (D.C. Cir. 1986) ....................................................................18

## OTHER AUTHORITIES

Aaron Young, PhD, et al., *A Census of Actively Licensed Physicians
    in the United States, 2016*, Journal of Medical Regulation (Vol. 10,
    No. 2) ..............................................................................................................24

Fed. R. Civ. P. 23 .............................................................................................passim

## INTRODUCTION

The district court certified a multistate class of hundreds of plaintiffs seeking to recover for emotional distress. Despite the fact that the claims as a whole are unquestionably unsuitable for class adjudication, the district court relied on Rule 23(c)(4) to certify narrow and abstract issues, limited to duty and breach.

This interlocutory appeal will permit this Court to clarify the relationship between Rule 23(c)(4) and Rule 23(b), an important and unsettled issue in the law of class certification. The district court held that under this Court's decision in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011), Rule 23(b) has no relevance to certification under Rule 23(c)(4). *See* Dkt. 57, Class Certification Memorandum (cited hereinafter as "Mem.") at 9. But this Court, after *Gates*, has held that a plaintiff "may seek certification under Rule 23(c)(4)" only after "having satisfied Rule 23(a) and (b)'s requirements." *Luppino v. Mercedes Benz USA*, 718 F. App'x 143, 146 (3d Cir. 2017).

This Court should also permit interlocutory review because of the errors committed by the district court. For example, the district court's cursory consideration of the *Gates* factors led to certification of an issue class that is "unlikely to substantially aid resolution of the substantial issues on liability and causation." *Gates*, 655 F.3d at 274; *see also Spence v. Bd. of Ed. of Christina Sch.*

1

*Dist.*, 806 F.2d 1198, 1202 (3d Cir. 1986) (explaining that emotional distress is "too interwoven to allow a fair determination of damages apart from liability").

And the district court misplaced the burden of proof regarding variations in state law, noting that the "parties have not identified any variations" in the law of the relevant case, Mem. at 11, rather than asking whether Plaintiffs carried their burden of proof to demonstrate the absence of variations. The district court's alternative holding—that Pennsylvania law could apply to claims arising from out-of-state treatment rendered by an out-of-state doctor to an out-of-state patient—is facially incorrect. Mem. at 11.

Nor did the district court ever seriously grapple with the other problems inherent in attempting to certify a class seeking to recover for emotional distress. Even if Plaintiffs suffered compensable emotional distress merely because they learned that they were examined by an allegedly unqualified doctor, Plaintiffs have not demonstrated that such a reaction is typical. And if learning that the doctor was unqualified is what causes emotional distress, then certifying and providing notice of this class action will actually **cause** injuries to class members.

For these reasons—and because of the settlement pressure that class certification creates—this Court should grant this petition for permission to appeal.

## FACTUAL BACKGROUND

Petitioner Educational Commission for Foreign Medical Graduates ("ECFMG") is a Philadelphia-based private non-profit organization that promotes quality health care for the public. *See* Dkt. 32-3. Among other tasks, ECFMG certifies graduates of international medical schools as ready to enter U.S. graduate medical education (usually residency programs). *See id.*

The certification provided by ECFMG is limited. ECFMG would only (1) certify that the applicant received passing grades on an English exam and two substantive exams (the first two steps of the United States Medical Licensing Examination ("USMLE")), Dkt. 32-5; Dkt. 32-46 at 88:21–89:2; and (2) verify the diploma provided by the applicant by asking the issuing medical school to confirm its legitimacy, Dkt. 32-46 at 88:3–14.

Other than certifying the test results and the diploma, ECFMG did not make any additional representations regarding the applicant. In particular, ECFMG's reports did not (and were not expected to) verify an applicant's identity, Social Security number, immigration status, passport information, criminal background, readiness to treat patients, ethics, honesty, morality, or character. *Id.* at 198:16–22, 200:13–15, 240:18–241:6, 242:6–243:3, 244:22–245:13.

*Dr. Akoda*

This case involves obstetrician/gynecologist John Nosa Akoda, who ECFMG certified in 1997.[1]  Dkt. 32-21.  It is undisputed that Dr. Akoda passed the two substantive examinations and presented to ECFMG a medical school diploma in his name that was verified as authentic by the University of Benin, a Nigerian medical school.  Dkt. 32-1 at 4; Dkt. 39-2.  After obtaining ECFMG certification, Dr. Akoda successfully:

- passed Step 3 of the USMLE, Dkt. 32-34 at 4;

- was admitted to and completed a residency program at Howard University Hospital, Dkt. 39-5; Dkt. 39-6;

- became licensed to practice medicine in Maryland and Virginia, Dkt. 32-34 at 4;

- was awarded hospital privileges at Prince George's Hospital Center and hired by several medical offices, *id.*; and

- achieved Board certification in his specialty, Dkt. 39-7.

In 1996, Jersey Shore Medical Center, a residency program that Dr. Akoda had entered, raised concerns with ECFMG regarding Dr. Akoda's identity.  Dkt. 32-23.  Following an investigation—in which Dr. Akoda addressed those concerns and provided supporting hard-copy documentation, Dkt. 32-26; Dkt. 32-27—ECFMG

---

[1] The district court's statement that John Akoda "was not a doctor," Mem. at 1, is incorrect.  John Akoda completed a residency program, was licensed to practice medicine, and achieved Board certification as a specialist.  By any meaning of the term, John Akoda was a "doctor."

concluded that there was insufficient evidence of any discrepancy.  Dkt. 32-29; Dkt. 32-46 at 150:24–151:6   Jersey Shore Medical Center also reported its suspicions to the Maryland Board of Physicians, which took no action against Dr. Akoda.  Dkt. 39-9.

In November 2016, following a two-year investigation by the U.S. Attorney's office, Dr. Akoda pleaded guilty to misuse of a Social Security number.  Dkt. 32-32. It was discovered that Dr. Akoda had previously applied to ECFMG under two different names: Oluwafemi Charles Igberase in 1992 and Igberase Oluwafemi Charles in 1994.  *Id.*  ECFMG immediately revoked his certificate.  Dkt. 32-33.

### *Plaintiffs Sue ECFMG for Emotional Distress*

The four named plaintiffs—Monique Russell, Jasmine Riggins, Elsa Powell, and Desire Evans—are former patients of Dr. Akoda, either because Dr. Akoda was their regular doctor or was the doctor who happened to be "on-call" at the hospital when they gave birth.  Even among Plaintiffs, there is significant variation in their treatment by and allegations against Dr. Akoda:

- For Ms. Russell, Dr. Akoda performed a successful emergency c-section. Dkt. 46-16 at 9.  She not only does not complain about her treatment but agrees that it "really was best/necessary."  Dkt. 39-33.  She never sought any mental health treatment after hearing about Dr. Akoda's guilty plea. Dkt. 50-7.

- For Ms. Riggins, Dr. Akoda performed a successful elective c-section and provided prenatal care.  Dkt. 46-16 at 8.  She had no concerns about her treatment and no history of mental health or psychiatric treatment.  Dkt. 46-12 at 4.

- For Ms. Powell, Dr. Akoda successfully delivered her baby, performed emergency surgery, and assisted with post-natal care. Dkt. 46-16 at 6. She alleges that Dr. Akoda was flirtatious and made inappropriate comments. *Id.* at 6. She has no history of mental health or psychiatric treatment. Dkt. 46-13 at 4.

- For Ms. Evans, Dr. Akoda performed a successful emergency c-section. Dkt. 46-16 at 4. She alleges that he improperly manipulated her clitoris. *Id.* at 4. Ms. Evans has extensive history of mental health treatment, both before and after encountering Dr. Akoda. Dkt. 50-8 at 6–8. None of her mental health records refers to Dr. Akoda. *Id.* at 7.

Despite the large number of persons and entities potentially responsible for Plaintiffs' alleged emotional distress[2]—most obviously, Dr. Akoda himself but also including the residency program from which he graduated, states that licensed him, and hospitals and medical practices that employed him—Plaintiffs chose to sue ECFMG on behalf of a putative class.[3]

Following extensive briefing and a hearing, Judge Wolson certified an issue class under Federal Rule of Civil Procedure 23(c)(4), comprising "All patients examined or treated in any manner by Oluwafemi Charles Igberase (a/ka Charles J.

---

[2] At the hearing, Plaintiffs' counsel confirmed that the only harm for which they seek for the class to recover is "emotional distress." Jan. 30, 2020 Hearing Tr. at 5:22–25.

[3] This litigation follows an unsuccessful putative class action against Dimensions Health Corporation and others who operated Prince George's Hospital Center, where Dr. Akoda practiced. *See Russell v. Dimensions Corp., et al.*, CAL 17-22761 (Prince George's Cty. Cir. Ct., Md.); *Dews v. Dimensions Healthcare Sys.*, CAL 17-37091 (Prince George's Cty. Cir. Ct., Md.). The plaintiffs in those cases abandoned their claims after receiving the defendants' motions for summary judgment.

Akoda) beginning with his enrollment in a postgraduate medical education program
at Howard University in 2007." Dkt. 58 at 1–2.

The following issues were certified:

(1) whether Defendant Educational Commission for Foreign Medical
Graduates ("ECFMG") undertook or otherwise owed a duty to class
members;
(2) whether ECFMG undertook or otherwise owed a duty to hospitals
and state medical boards, such that ECFMG may be held liable to class
members pursuant to Restatement (Second) of Torts § 324A;
(3) whether ECFMG breached any duty that it owed to class members;
and
(4) whether ECFMG breached any duty that it owed to hospitals and
state medical boards.

*Id.* at 2.

## QUESTIONS PRESENTED

1.      Whether Rule 23(c)(4) permits certification of a class limited to questions of duty and breach with respect to a multistate class seeking only highly individualized emotional distress damages, without any finding that questions of law or fact common to class members predominate over questions affecting only individual class members and without any finding that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy?

2.      Whether the district court erred in certifying the class, including:

a.      whether the district court correctly applied this Court's decision in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011);

b.      whether the district court erred in analyzing choice-of-law and misallocated the burden regarding variations in state law;

c.      whether the district court erred in analyzing typicality, without considering whether any other class members suffered the same alleged emotional damages as Plaintiffs; and

d.      whether the district court erred by failing to consider that certification will cause emotional distress to class members.

## RELIEF SOUGHT

Petitioner seeks leave to appeal the March 23, 2020 Order granting Plaintiffs'

motion for class certification.

<h2 style="text-align:center">REASONS FOR GRANTING THE PETITION</h2>

Interlocutory review of a district court's class certification order may be granted "on the basis of any consideration." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1710 (2017). This Court has identified several circumstances in which review is appropriate, including (1) "when the appeal might 'facilitate development of the law on class certification,'" (2) "when the district court's class certification determination was erroneous;" and (3) "when class certification risks placing 'inordinate . . . pressure on defendants to settle.'" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 376–77 (3d Cir. 2013) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 164–65 (3d Cir. 2001), *as amended* (Oct. 16, 2001)). Review is warranted under all three criteria.

## I.   Review Would Facilitate Development of the Law on Class Certification Under Rule 23(c)(4).

This Court should provide guidance on certification of issue classes under Rule 23(c)(4), which provides, "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

This Court has not addressed Rule 23(c)(4) at length in nearly a decade. In *Gates v. Rohm and Haas Co.*, this Court recognized "[t]he interaction between the requirements for class certification under Rule 23(a) and (b) and the authorization of issue classes under Rule 23(c)(4)" as "a difficult matter" that has "generated

<div style="text-align:center">10</div>

divergent interpretations among the courts." 655 F.3d at 272. And this Court set forth a list of factors that district courts should consider as part of the "rigorous analysis" in deciding whether to certify an issue class:

- the type of claim(s) and issue(s) in question;

- the overall complexity of the case;

- the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives;

- the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy;

- the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s);

- the potential preclusive effect or lack thereof that resolution of the proposed issue class will have;

- the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues;

- the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and

- the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

*Id.* at 273.

Two issues related to Rule 23(c)(4) and the *Gates* factors warrant clarification by this Court. First, did the district court correctly hold—contrary to a decision by

11

this Court post-dating *Gates*—that the *Gates* factors render Rule 23(b) irrelevant to class certification?  Second, did the district court's cursory discussion of *Gates* satisfy the "rigorous analysis" required by this Court?

### A.   This Court should clarify the relationship between the *Gates* factors and Rule 23(b).

The district court interpreted *Gates* as holding that Rule 23(b) is irrelevant to certification of an issue class under Rule 23(c)(4), holding that it only had to "consider Rule 23(a) and then turn to the *Gates* factors in conducting its analysis." Order at 9.  This decision appears to be the first case ever interpreting *Gates* in this manner.

Numerous decisions—including one from this Court—cast serious doubt on this understanding of *Gates*.   Two years after *Gates*, the Supreme Court unequivocally reaffirmed that "a party seeking to maintain a class action" must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  Relying on *Comcast*, an unpublished decision from this Court held that a plaintiff "may seek certification under Rule 23(c)(4)" only after "having satisfied Rule 23(a) and (b)'s requirements." *Luppino*, 718 F. App'x at 146; *see also id.* (holding that the "conclusion that a (c)(4) class was not certifiable" need not be addressed because of "the class certification's (b)(3) defects").

12

Nor have other district courts shared the understanding of the district judge in this case.  *See Romero v. Allstate Ins. Co.*, 52 F. Supp. 3d 715, 724 (E.D. Pa. 2014) (quoting *Gates* while noting that "[c]ertification of particular issues under Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are first met"); *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, No. 13-md-2445, 2019 WL 4735520, at *18 (E.D. Pa. Sept. 27, 2019) (relying on *Romero* for this proposition).

Indeed, Plaintiffs' counsel—in a brief filed with the Supreme Court—disavowed the district court's interpretation of *Gates*.  Janet, Janet & Suggs, LLC, who the district court appointed class counsel, represented to the Supreme Court that this Court "rest[s] the determination whether to certify an issue class on whether the issue class itself satisfies the Rule 23(b)(3) requirements of predominance and superiority, and appl[ies] a 'functional' analysis to consider whether an issue class is a superior method of adjudicating a case."  Brief in Opposition, *Behr Dayton Thermal Prods., LLC v. Martin*, No. 18-472 (U.S. 2019), *available at* https://tinyurl.com/w4ep2ju.

The district court's treatment of Rule 23(b)(3) as irrelevant is particularly puzzling, given the acknowledgment by Plaintiffs' counsel at the class certification hearing that "in essence, it's a (b)(3) class" that Plaintiffs seek to certify.  Jan. 30, 2020 Hearing Tr. 24:10-12; *see also id.* at 23:2–24:1 (The Court: "[I]f I certify a

13

class here, it is ultimately a (b)(3) class.  Right?").  It is incongruous to suggest that the certified class is "in essence" a Rule 23(b)(3) class but that Rule 23(b)(3) need not be satisfied.  And the district court noted the difficulty in understanding the interaction of the provisions of Rule 23.  *See id.* at 26:3–5 ("[O]ne of my questions for you all is sort of the interplay between Rule 23(a) and (b) on the one hand and 23(c)(4) on the other hand[.]").

The correct standard for certification of an issue class is an important one, which warrants clarification by this Court.  If the certification order in this case is correct, then certification would be proper in any case in which a plaintiff can identify a common issue of law or fact potentially affecting numerous plaintiffs.  No matter how predominant the individualized issues and evidence (or superior individual suits or other judicial tools might be), a district court would always be free to slice off a narrow, abstract issue and certify it for class treatment.  This is a far cry from the "rigorous analysis" of Rule 23(b) demanded by this Court and the Supreme Court.

## B.    This Court should correct the district court's misapplication of *Gates*.

Even apart from the district court's failure to consider Rule 23(b) (much less find that the requirements of the Rule had been met), the district court failed to engage in the rigorous analysis under Rule 23(c)(4) required this this Court's precedent: "[A] court's decision to exercise its discretion under Rule 23(c)(4), like

14

any other certification determination under Rule 23, must be supported by rigorous analysis." *Gates*, 655 F.3d at 272 (quoting *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 200–01 (3d Cir. 2009) (alteration in original)).

The district court's discussion of the *Gates* factors begins on page 22 of the 28-page opinion. But the first four pages of that truncated discussion concern Plaintiffs' request for certification of all liability issues, which the district court rejected. *See* Mem. at 22–25. Only four paragraphs of the opinion discuss whether Rule 23(c)(4) and *Gates* permit the certification ordered by the district court. *See* Order at 25-28.

This brief discussion does not engage in a rigorous analysis of the *Gates* factors sufficient to justify certification. For example, the district court failed to consider "the type of claims at issue." This failure is significant in light of this Court's holding that claims based on emotional distress are particularly "unsuitable for class treatment," given that emotional distress liability and damages are "too interwoven to allow a fair determination of damages apart from liability." *Spence*, 806 F.2d at 1202.

And the district court's analysis of "efficiencies to be gained" conflicts with this Court's analysis in *Gates*. In *Gates*, the plaintiffs brought claims based on alleged exposure to environmental contamination. Like Plaintiffs, the *Gates* plaintiffs sought certification of generalized, abstract questions of liability, while

leaving the bulk of the claims for later, individual proceedings. *See Gates*, 655 F.3d at 272 (explaining that "causation and extent of contamination," "the fact of damages," and "the amount of damages" would need to be determined in follow-up proceedings). In light of the "numerous individual issues that would remain," resolution of the common issues was "unlikely to substantially aid resolution of the substantial issues on liability and causation," so certification under Rule 23(c)(4) would be improper. *Id.* at 272, 274.

As in *Gates*, in this case, determination of the classwide issues would still leave causation, the fact of damages, and the amount of damages to be determined in follow-up proceedings. The district court failed to follow this Court's direction to "explain how class resolution of the issue(s) will fairly and efficiently advance the resolution of class members' claims, including resolution of remaining issues," *id.* at 273, and as a result, certified an issue class indistinguishable from the issue class rejected in *Gates*.

And although the district court suggested that a jury in individual proceedings "will not have to reexamine any of the evidence about ECFMG's conduct," that suggestion is incorrect. Mem. at 27. To determine causation (particularly proximate causation), understand who Dr. Akoda was, and even have a basic understanding of the theory of liability against ECFMG, every jury in every individual proceeding would need to hear essentially all of the evidence that Plaintiffs propose to present

on the class issues. And in every case, determining causation would require a jury to consider the entire chain of events—including any alleged wrongdoing by ECFMG, residency programs that admitted Dr. Akoda, medical boards that licensed him, hospitals that gave him privileges, the specialty board that certified him, and law enforcement officers who investigated him—to decide which actor, if any, was the proximate cause of any alleged emotional distress suffered by any individual plaintiff. *Cf. Bordentown v. FERC*, 903 F.3d 234, 247 (3d Cir. 2018) (noting that "intervening act[s]" can sever a causal chain). No efficiencies would be gained by such a proceeding.

Every justification offered by the district court for certification of the issue class in this proceeding would apply equally to the issue class denied certification in *Gates*. Granting interlocutory review would allow this Court to develop the law on class certification under Rule 23(c)(4) and provide guidance on application of the *Gates* factors in cases where parties seek to certify narrow issues for class treatment while leaving the majority of the claims for individual determinations.

## II.  This Court Should Grant Interlocutory Review Because The District Court's Class Certification Determination Was Erroneous.

Review of a district court's class certification determination is also appropriate when that determination is erroneous. *Rodriguez*, 726 F.3d at 377. Even apart from the errors in failing to consider Rule 23(b)(3) and applying the *Gates* factors, the district court committed other errors that warrant review.

**A.    The district court erred in analyzing variations in state law.**

"[I]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304 n.28 (3d Cir. 2011) (en banc) (internal quotation marks and citations omitted); *see Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 183–84 (3d Cir. 2014) (affirming denial of class certification due to variations in state law).  The district court incorrectly analyzed variations in state law and misplaced the burden of proof.

The party seeking certification of a class action has the burden to conduct an "extensive analysis" of state law variations.  *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986); *see also Grandalski*, 767 F.3d at 183-84; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) (noting that the burden "rests squarely with the plaintiffs"); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) ("[M]ovants must credibly demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.'" (quoting *In re Sch.l Asbestos Litig.*, 789 F.2d at 1010)).

Plaintiffs failed to carry their burden in this case.  Although ECFMG is headquartered in Pennsylvania, Dr. Akoda was not licensed to practice medicine in Pennsylvania and did not treat patients in Pennsylvania.  He was licensed to practice medicine in Maryland and Virginia, worked in two private medical practices in

Maryland, and secured privileges at hospitals in Maryland and the District of Columbia. The certified class comprises patients examined or treated in at least three jurisdictions (Maryland, Virginia, and the District of Columbia). Rather than provide the necessary "extensive analysis" of these states' laws, Plaintiffs' counsel merely represented that they were "unaware" of any relevant conflicts between the laws of Pennsylvania and other states. Dkt. 32-1 at 22–23.

The district court followed suit and misallocated the burden of proof. Rather than asking whether Plaintiffs proved that there was no variation, the district court relied on the fact that "the parties have not identified any [variations]," Mem. at 11, placing the burden on ECFMG to identify differences in state law rather than on Plaintiffs to prove uniformity.

The district court overlooked conflicts between the laws of the relevant jurisdictions. Maryland, for example, "does not recognize the tort of negligent infliction of emotional distress." *Alban v. Fiels*, 61 A.3d 867, 876 (Md. 2013). Pennsylvania and the District of Columbia recognize causes of action for negligent infliction of emotional distress but with significant variations: In the District of Columbia, a plaintiff must prove, *inter alia*, that "the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being" and that there is "an especially likely risk that the defendant's negligence would cause serious emotional

distress to the plaintiff." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011). Pennsylvania courts are split as to whether the Pennsylvania Supreme Court would approve of negligent infliction of emotional distress claims based on similar considerations. *Hershman v. Muhlenberg College*, 17 F. Supp. 3d 454, 460 n.6 (E.D. Pa. 2014).

The district court did not grapple with these variations in state law or engage in any meaningful analysis of the availability of emotional distress damages in regular negligence claims. Its reasoning falls well short of the "extensive analysis" of state law variations required to show "that class certification does not present insuperable obstacles." *In re Sch. Asbestos Litig.*, 789 F.2d at 1010.

The district court's alternative holding—that Pennsylvania law would apply to the claims of class members treated in hospitals across the country—is erroneous. Mem. at 11. The Supreme Court has rejected this approach: Courts cannot avoid variations in state law by taking "a transaction with little or no relationship to the forum and apply[ing] the law of the forum." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985).

Pennsylvania applies a "flexible" choice-of-law analysis that "permits analysis of the policies and interests underlying the particular issue before the court" and applies the law of the state with the "most interest in the problem." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227 (3d Cir. 2007) (quoting *Griffith v.*

*United Air Lines, Inc.*, 203 A.2d 796, 805–06 (Pa. 1964)). Pennsylvania has little (if any) interest in the emotional distress resulting from out-of-state treatment rendered by an out-of-state doctor to an out-of-state plaintiff. Indeed, serious problems under the Commerce Clause would arise if Pennsylvania purported to apply its law to claims arising out of the relationship between doctors and patients in other states.

The alternative holding fails, and Plaintiffs' failure to present an analysis of variations in state law, standing alone, should have precluded certification.

### B.    The district court erred in analyzing Rule 23(a).

Nor did the district court correctly analyze Rule 23(a). Even assuming (the highly questionable premise) that Plaintiffs suffered compensable emotional distress when they learned, years after the fact, that their Board-certified doctor (who delivered hundreds of healthy babies to healthy mothers) had misused a Social Security number, Plaintiffs did not demonstrate that their reactions were typical of the reactions of other members of the putative class. For class members who were perfectly satisfied with the medical care and treatment that they received from Dr. Akoda, there is no reason to believe that members of the class would share Plaintiffs' atypical emotional distress. *See* Jan. 30, 2020 Hearing Tr. at 12:20–21 (Plaintiffs' counsel conceding  that the class includes individuals who "didn't suffer any provable emotional distress").

Case: 20-8024    Document: 1-1    Page: 29    Date Filed: 04/06/2020


Indeed, if Plaintiffs' liability theory were correct—and learning that Dr. Akoda misused a Social Security number would predictably cause emotional distress to his former patients—then certification of this class action would **cause harm** to unnamed class members.  Under Plaintiffs' theory, learning of Dr. Akoda's guilty plea causes emotional distress.  Class members who are unaware of the guilty plea have (at present) suffered no harm at all.  But certifying the class and providing notice would inflict emotional distress on class members solely for the purpose of allowing them to recover for this distress against ECFMG.  Whether this issue is viewed as typicality (because Plaintiffs, unlike unnamed class members, have allegedly already suffered emotional distress), adequacy (because of the inherent conflict of interest in Plaintiffs' plans to inflict emotional distress on their fellow class members), or superiority (because of the harms to class members), the fact should preclude certification.

And to the extent that class members were dissatisfied with their treatment by Dr. Akoda—and suffered actual, physical injuries as a result of malpractice—a class action seeking only emotional distress could preclude them from asserting their claims.  The district court relied on the opportunity to opt out to cure any conflicts between named and unnamed class members, Mem. at 19, but if opting out could always cure a conflict between named and unnamed class members, adequacy would be a dead letter.  *But see Slade v. Progressive Sec. Ins. Co.*, 856 F. 3d 408, 412 (5th

Cir. 2017) ("When the class representative proposes waiving some of the class's claims, the decision risks creating an irreconcilable conflict of interest with the class.").

Moreover, the issue class has not been certified under any provision of Rule 23(b), and nothing in Rule 23(c)(4) creates a right for class members to opt out.[4] This procedural issue further demonstrates the need for this Court's clarification of the proper standard under Rule 23(c)(4) for issue certification.

## III.    Class Certification Places Inordinate Pressure on ECFMG to Settle.

Finally, this Court should grant review because of the settlement pressure created by class certification. Rule 23(f) recognizes that "granting class certification is often the defining moment in class actions" because it may "create unwarranted pressure to settle nonmeritorious claims on the part of defendants." *Newton*, 259 F.3d at 162. Rather than "run the risk of potentially ruinous liability," *id.* at 164 (quoting Fed. R. Civ. P. 23(f) advisory committee's note), a class action defendant "[f]aced with even the small chance of a devastating loss" may be pressured into settling questionable claims, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011). The mere "potential for uncertainty and disruption in a lawsuit" alone might "allow plaintiffs with weak claims to extort settlements from [an] innocent

---

[4] At the hearing, the district court stated that "[w]e still do notice and an opt-out period" for a "true (c)(4) class" but offered no support for this proposition.

compan[y]."  *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 149 (2008).

Class certification places inordinate pressure on ECFMG to settle.  There are hundreds of class members alleging emotional distress damages that are difficult to quantify and which, if they proceeded trial, could result in outsized judgments.  The threat of class-wide determinations regarding ECFMG's duties gives rise to particular concern for ECFMG because, in the event of unfavorable holdings, ECFMG could theoretically face class actions in connection with treatment rendered by any international medical graduate (who compose approximately 22% of all doctors in the United States).  Aaron Young, PhD, et al., *A Census of Actively Licensed Physicians in the United States, 2016*, Journal of Medical Regulation (Vol. 10, No. 2), at 10, *available at* https://tinyurl.com/tlnkqat.  Class certification thus places "inordinate or hydraulic pressure" on ECFMG to settle and weighs in favor of granting review.  *Newton*, 259 F.3d at 164.

## CONCLUSION & PRAYER FOR RELIEF

For the foregoing reasons, this Court should grant this petition for permission to appeal under Rule 23(f) and permit interlocutory review of the class certification order.

Dated:  April 6, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: _____

William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002

Brian W. Shaffer
Matthew D. Klayman
1701 Market St.
Philadelphia, PA 19103

*Counsel for Defendant-Petitioner*
*Educational Commission for Foreign Medical Graduates*

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2020, the foregoing Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) was filed with the Clerk of Court for the U.S. Court of Appeals for the Third Circuit by email to emergency_motions@ca3.uscourts.gov, in accordance with the April 1, 2020 Filing Notice on acceptance of original proceedings filings by email.  I also certify that copies of the foregoing Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) were served by email upon the following counsel:

Nicholas M. Centrella
CONRAD O'BRIEN
1500 Market Street
Centre Square
West Tower, Suite 3900
Philadelphia, PA 19102

Jonathan Schochor
Philip C. Federico
Brent P. Ceryes
SCHOCHOR FEDERICO & STATON, PA
1211 St. Paul Street
Baltimore, MD 21202

Cory L. Zajdel
Z LAW LLC
2345 York Road, Suite #B-13
Timonium, MD 21093

Patrick A. Thronson
JANET JANET & SUGGS LLC
4 Reservoir Circle, Suite 200
Baltimore, MD 21208

David E. Haynes
Karen E. Evans
THE COCHRAN FIRM
1100 New York Ave NW
Suite 340
Washington, DC 20005

Paul M. Vettori
Danielle S. Dinsmore
LAW OFFICES OF PETER ANGELOS
One Charles Center
100 N. Charles Street
Baltimore, MD 21201

Robin Schleifer Weiss
HAGGERTY GOLDBERG
SCHLEIFER & KUPERSMITH
92 Buck Road
Holland, PA 18966

*Counsel for Plaintiffs-Respondents*

William R. Peterson

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.     This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c)(1) because this petition contains 5,171 words, excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point font.


_William Peterson_
_____
William R. Peterson
*Counsel for Defendant-Petitioner,*
*Educational Commission for Foreign*
*Medical Graduates*

Dated: April 6, 2020

ATTACHMENT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MONIQUE RUSSELL, JASMINE RIGGINS,  ELSA M. POWELL, and DESIRE EVANS, on behalf of themselves and all others similarly situated, | Case No. 2:18-cv-05629-JDW |
| *Plaintiffs,* |  |
| v. |  |
| EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, |  |
| *Defendant.* |  |

## <u>MEMORANDUM</u>

For years, a man using the name "John Charles Akoda" passed himself off as an OB/GYN. It turns out he was not a doctor at all.  Now, four of his former patients ask the Court to certify a class of his former patients. But they aren't suing him. They are suing the Educational Commission For Foreign Medical Graduates ("ECFMG"), a non-profit organization that certified that the man posing as Akoda had graduated from medical school abroad. Plaintiffs claim that ECFMG was negligent when it certified him as a doctor and when it failed to investigate allegations of identity fraud against him. They want the Court to certify a class only on liability issues so that, if they prevail, they can

proceed to individual proceedings about the emotional damages that they claim. For the reasons that follow, the Court will certify a class to consider the duty and breach elements of Plaintiffs' claims, which are subject to common proof, but will decline to certify issues about causation and damages, which are not.

## I.    BACKGROUND

### A.    ECFMG's Role In Qualifying International Medical Graduates

ECFMG is a non-profit based in Philadelphia. It certifies international medical graduates ("IMGs")—*i.e.*, individuals who received a medical education outside of the United States and Canada—to practice medicine in the United States. It verifies that IMGs received a degree from an appropriate institution and administers tests of medical knowledge and English proficiency. For qualified IMGs, it issues a certification, which IMGs can then use to apply to residency and other graduate medical education programs and to apply for state medical licenses.

ECFMG has a process for investigating what it calls "irregular behavior," meaning actions that might subvert ECFMG's certification process. It conducts investigations that include interviews with accused IMGs, as well as other individuals involved, and review of relevant documents. If ECFMG concludes that an IMG has engaged in irregular

behavior, it can revoke its certification of that IMG, or it can take lesser
actions.

**B.   Igberase/Akoda**

In April 1992, Oluwafemi Charles Igberase applied to ECFMG for
certification. He failed ECFMG's medical licensing exam twice but passed on
his third try. ECFMG then issued him a certificate as an IMG. However, he
did not gain admission to a residency program. In March 1994, Igberase
submitted a second application to ECFMG for certification. In this second
application, he used a false date of birth and a different name: Igberase
Oluwafemi Charles. ECFMG approved this second application in December
1994. In November 1995, ECFMG determined that Igberase fraudulently
applied for two ECFMG certifications under two different names and revoked
each certification.

Igberase applied for certification to ECFMG a third time in 1996, using
a fake passport and yet another name: John Charles Akoda. ECFMG certified
Akoda in August 1997. In 1998, Igberase applied for and was admitted to a
residency program at Jersey Shore Medical Center ("JSMC"). In August 2000,
JSMC asked ECFMG to investigate Akoda because JSMC learned that the
individual known as "Akoda" had served as a resident in two other U.S.
residency programs under the name Igberase. ECFMG began an
investigation. Using the "Akoda" identity, Igberase disputed the JSMC

allegations. In December 2000, JSMC advised ECFMG that it had dismissed Akoda from its residency program for using a false social security number. Plaintiffs allege that ECFMG took no action to retract Akoda's certification.

In 2006, Igberase applied for a residency at Howard University Hospital, using the Akoda identity and another individual's social security number. After completing the program in 2011, he applied for and received a Maryland medical license using fake identification documents. That same year, he became a member of the medical staff at Prince George's Hospital Center and began seeing patients there.

On June 9, 2016, law enforcement executed search warrants concerning Igberase/Akoda and discovered fraudulent or altered documents, including medical diplomas, transcripts, and letters of recommendation. He signed a plea agreement admitting to misuse of a social security number. ECFMG revoked the certification it had issued to Akoda. In March 2017, Igberase was sentenced by the United States District Court for the District of Maryland. Shortly thereafter, Prince George's Hospital Center terminated his medical privileges, and the Maryland Board of Physicians revoked his license.

## C.    Procedural History

Plaintiffs Monique Russell, Jasmine Riggins, Elsa Powell, and Desire Evans are former patients of Igberase (who they knew as "Akoda"). He performed unplanned emergency cesarean section surgery on Ms. Russell and

Ms. Riggins. He also delivered Ms. Evans' child and Ms. Powell's child. None of the patients knew Igberase's true identity, and all assumed he was a doctor. They allege that he touched them without informed consent and that he performed inappropriate examinations of a sexual nature while utilizing inappropriate and explicit sexual language.

Plaintiffs assert claims of negligence and negligent infliction of emotional distress ("NIED") against ECFMG, arising out of its certification of Igberase. They ask the Court to certify a class of "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)." (ECF No. 1, Ex. A at ¶ 48.) Plaintiffs ask the Court to certify the class as to liability, which they describe as "Option A." Alternatively, they propose nine specific issues for which the Court should certify a class ("Option B"):  (1) whether ECFMG undertook or otherwise owed a duty to class members who were patients of Igberase; (2) whether ECFMG breached its duty to class members; (3) whether ECFMG undertook or otherwise owed a duty to hospitals and state medical boards, such that ECFMG may be held liable for foreseeable injuries to third persons such as class members pursuant to Restatement (Second) of Torts § 324A; (4) whether ECFMG breached its duty to hospitals and state medical boards; (5) whether the emotional distress and other damages that Plaintiffs allege were a foreseeable result of ECFMG's conduct; (6) whether ECFMG's conduct

5

involved an unusual risk of causing emotional distress to others under
Restatement (Second) of Torts § 313; (7) whether ECFMG is subject to
liability under Restatement (Second) of Torts § 876 for assisting Igberase in
committing fraud; (8) whether ECFMG knew or should have known that
Akoda was, in fact, Igberase; and (9) whether it was foreseeable that
ECFMG's conduct could result in emotional distress experienced by class
members. (ECF No. 32-1 at 11.)  Of these, issues 5, 6, and 9 focus on
questions of causation and damages (the "Damages Issues"), while the others
relate to questions of liability.  The Court held oral argument on January 30,
2020.

## II.  STANDARD OF REVIEW

A court must not certify a class "casually." *In re Processed Egg Prods.
Antitrust Litig.*, 312 F.R.D. 124, 132 (E.D. Pa. 2015). Instead, class
"certification is proper only if the trial court is satisfied, after a rigorous
analysis" that all of the necessary requirements have been fulfilled. *Ferreras
v. American Airlines, Inc.*, 946 F.3d 178, 183 (3d Cir. 2019) (*citing Wal-Mart
Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)). A rigorous analysis
requires that factual determinations be made by a preponderance of the
evidence. *See id*. This inquiry will at times require a court to examine issues
that overlap, to some extent, with issues left for the final merits
determination. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305,

6

318 (3d Cir. 2008). However, the Court should only do so to the extent necessary to resolve the class certification motion, and no more. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

A party seeking to certify a class must satisfy the requirements of Federal Rule of Civil Procedure 23, which ordinarily means the four requirements of Rule 23(a) and the requirements of one subparagraph of Rule 23(b). *See Gonzalez v. Corning*, 885 F.3d 186, 192 (3d Cir. 2018), *as amended* (Apr. 4, 2018). Here, however, Plaintiffs seek to proceed with an issues class under Rule 23(c)(4), which provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). ECFMG argues that Plaintiffs cannot certify an issues class until Plaintiffs show that "the common issues predominate over the individual issues," *i.e.*, that Plaintiffs satisfy Rule 23(b)(3). (ECF No. 48 at 4.)

ECFMG's argument misunderstands the law in the Third Circuit. In *Gates v. Rohm and Haas Co.*, 655 F.3d 255 (3d Cir. 2011), the Circuit noted a disagreement among courts about how to apply Rule 23(b)(3)'s predominance requirement in cases arising under Rule 23(c)(4): some courts held that a plaintiff had to satisfy Rule 23(b)(3)'s predominance requirement for a case as a whole before certifying certain issues; while other courts allowed certification of an issue even if common issues did not predominate in the

7

case as a whole. *See id.* at 272-73. The Third Circuit declined to join "either camp in the circuit disagreement" and instead set forth a list of factors that courts should consider:  (a) the type of claim(s) and issue(s) in question; (b) the overall complexity of the case; (c) the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; (d) the substantive law underlying the claim(s), including any choice of law questions it might present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy; (e) the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); (f) the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; (g) the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues; (h) the impact individual proceedings may have upon one another, including whether remedies are undividable such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and (i) the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s). *Id.* at 273.

ECFMG's argument that the Court should require Plaintiffs to satisfy Rule 23(b)(3)'s predominance requirement before turning to these factors parrots one of the camps that the Third Circuit acknowledged but refused to join in *Gates*. Because the Third Circuit rejected that view, this Court must do the same. Therefore, the Court will consider Rule 23(a) and then turn to the *Gates* factors in conducting its analysis. At each stage, the burden will remain on Plaintiffs to show by a preponderance of the evidence that the Court should certify a class.

## III.   ANALYSIS

### A.   Choice Of Law

Before tackling the question of class certification, the Court addresses the law that applies here. It does so because the parties spar about the applicable choice of law and ECFMG contends that multiple state laws might apply, thereby making class certification inappropriate. The Third Circuit has held that a "district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements" for class certification. *Gates*, 655 F.3d at 270. Thus, the Court must resolve the parties' genuine legal dispute about the choice of law so that it can then answer the question of whether to certify a class.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state, so Pennsylvania choice-of-law rules apply. *See Klaxon Co. v.*

9

*Stentor Mfg. Co.*, 313 U.S. 487, 496 (1941). Pennsylvania employs a flexible approach that considers both contacts establishing significant relationships with a state and a qualitative appraisal of the relevant states' policies with respect to the controversy. *See Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 219-20 (3d Cir. 2005); *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805-06 (1964). First, the court must determine whether an actual conflict exists between the laws of two or more states. Then, if an actual conflict exists, the court must determine whether the conflict is "true," "false," or "unprovided-for." *Rose v. Dowd*, 265 F. Supp.3d 525, 530 (E.D. Pa. 2017). No actual conflict exists if the laws between the states are the same or "if the same result would ensue under the laws of the forum state and those of the foreign jurisdiction." *Id.*; *see also Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If no conflict exists, the law of the forum state governs, and the court may end its choice-of-law analysis. *Id.*

Several states aside from Pennsylvania are implicated in this case: New Jersey, Maryland, and the District of Columbia, at a minimum. Other states might have some connection, but the parties have not identified them with any certainty, so the Court has not analyzed them. In any event, the Court concludes that those states' interests in the case would be far weaker than Pennsylvania's interest and that Pennsylvania law would therefore

apply. Not surprisingly, there is little, if any, variation between each state's law governing negligence and NIED.

The elements of negligence and negligent infliction of emotional distress are the same under Pennsylvania, New Jersey, and DC law. Even looking past the elements themselves, the Court discerns no real difference between them, and the parties have not identified any. Nor is there a conflict with Maryland law. While Maryland does not recognize NIED as a separate claim, "[r]ecovery may be had in a tort action for emotional distress arising out of negligent conduct." *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1066 (Md. Ct. Spec. App. 1986). So the same result would ensue under Maryland or Pennsylvania law. As such, there is no "actual" conflict between Maryland and Pennsylvania law, and Pennsylvania law applies.

Even if there were a true conflict between Pennsylvania law and any other state's law, the Court would apply Pennsylvania law to all of the claims in the case. The Court must apply the law of the state with the "most significant contacts or relationships with the particular issue." *Hammersmith*, 480 F.3d at 229-30. ECFMG suggests that Maryland has a greater interest because it involves treatment of Maryland residents by a fake doctor in Maryland. (ECF No. 40 at 19-20.) But this case is not about Igberase's conduct; it is about ECFMG's conduct. Under the circumstances of this case, Pennsylvania has a greater interest than Maryland, DC, New

11

Jersey, or any other state in determining what duties apply to its corporate citizen and whether that citizen has fulfilled those duties.

### B. Class Certification

#### 1. Class definition/ascertainability

A plaintiff seeking certification of a class must provide a proper class definition. *See* Fed. R. Civ. P. 23(c)(1)(B); *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 591-92 (3d Cir. 2012). In addition, a plaintiff seeking certification of a class generally must prove that the certified class is ascertainable. *See Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). The ascertainability inquiry is twofold, requiring a plaintiff to show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* (quotes omitted). A plaintiff need not identify all of the class members at the time of the class certification. Instead, she only has to show that class members can be identified. *See id.* However, courts should shy away from methods that rely on potential class members' say-so. *See Carrera v. Bayer Corp.*, 725 F.3d 300, 306 (3d Cir. 2013).

Here, Plaintiffs ask the Court to certify a class that includes "all patients examined and/or treated in any manner by Oluwafemi Charles Igberase (a/k/a Charles J. Akoda, M.D.)." (ECF No. 32-1 at 10.) ECFMG

12

complains that the class is not ascertainable because it captures patients that Igerbase encountered in Nigeria, before ECFMG certified him. At oral argument, Plaintiffs clarified that they intend the class to capture only patients that Igberase encountered after ECFMG certified his application. (Tr. at 9:5-10:5.)

ECFMG also contends that the class is not ascertainable because the phrase "examined and/or treated in any manner" is vague and would lead to confusion. The Court disagrees. The class definition is intended to capture any patient who received medical care or treatment from Igberase after ECFMG certified him. That phrase does not raise the type of questions that would require individual fact-finding or a subjective determination in order to identify class members.

Finally, ECFMG argues that there is no way to identify class members. Plaintiffs, however, point to medical records from the treating facilities and note that they have already used those records to identify more than 700 class members. (Tr. at 14:13-14:11.)  Those records, which Plaintiffs can obtain by subpoena after certification, provide the type of objective, administratively feasible mechanism required to identify class members. By obtaining the relevant records from Prince George's Hospital Center, Plaintiffs have satisfied their burden of demonstrating that the class is ascertainable; the Court is not just taking their word for it. ECFMG

speculates that Howard might not have records from the relevant time frames because records retention requirements would not require it. The possibility that some records might have been lost, however, does not render the class not ascertainable. *See Byrd,* 784 F.3d at 164 ("[A]scertainability only requires the plaintiff to show that class members *can be identified.* Accordingly, there is no records requirement.") (emphasis in original) (internal quotation omitted).

### 2. Rule 23(a) factors

Rule 23(a) sets forth four threshold requirements for all class actions: numerosity; commonality; typicality; and adequacy of representation. *See* Fed. R. Civ. P. 23(a). The Court addresses each requirement in turn.

### a. Numerosity

A plaintiff seeking certification must demonstrate that the class is so numerous that joinder of all members is impracticable. "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249-50 (3d Cir. 2016) (citation omitted). Here, Plaintiffs have shown that the potential class includes at least the 712 people that Igberase treated at Prince George's Hospital Center. That number alone would render joinder all but impossible, and the class is more expansive than

14

that. Plaintiffs have therefore satisfied the numerosity requirement. Notably, ECFMG does not argue otherwise.

### b. Commonality

Rule 23(a)(2) requires Plaintiffs to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not require perfect identity of questions of law or fact among all class members. Rather, 'even a single common question will do.'" *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (quoting *Dukes*, 564 U.S. at 359). However, the common issue must be "central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. There can be legal and factual differences among members of the class, as long as the defendant subjected them all to the same harmful conduct. Ultimately, the commonality bar is not a high one. *See Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).

Here, Plaintiffs have identified several common legal and factual questions that are central to the validity of their claims. In particular, questions about whether ECFMG owed a legal duty either to class members or hospitals and state medical boards, and questions about whether ECFMG breached those duties, are common to all members of the class. Plaintiffs

15

have therefore satisfied the commonality requirement.

ECFMG contends that questions about duty and breach are not common throughout the class because choice-of-law questions might result in different outcomes. Because the Court has already resolved the choice-of-law question, that argument has no impact. ECFMG also argues that determining whether a duty exists requires the Court to assess "the foreseeability of harm to a plaintiff in a particular situation." (Tr. of Hearing dated 1/30/20 at 47:19-48:2.)  ECFMG's argument conflates "foreseeability" as it relates to a duty and "foreseeability" as it relates to causation. Although the concept is embedded in both inquiries, it is not the same.

"The type of foreseeability that determines a duty of care, as opposed to proximate cause, is not dependent on the foreseeability of a specific event. Instead, in the context of duty, the concept of foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury." *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1369 (3d Cir. 1993) (internal quotations and citations omitted). Duty is predicated on the relationship existing between the parties at the relevant time, *i.e.*, the time that ECFMG certified Igberase to apply to a U.S. residency program and/or the time that it investigated (or failed to investigate) his identity fraud. *See, e.g.*, *Zanine v. Gallagher*, 497 A.2d 1332, 1334 (Pa. Super. Ct. 1985).

16

ECFMG's argument would leave open the possibility that a duty would not be fixed until after the fact because the circumstances that define the existence of a duty would not be known at the time that the defendant has to decide how to conduct itself. The law should not sanction such uncertainty. Parties are entitled to know the duties incumbent upon them when they decide how to conduct themselves, not later.

### c.    Typicality

The third requirement, typicality, is normally met where "claims of representative Plaintiffs arise from the same alleged wrongful conduct." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004); FRCP 23(a)(3). "Typicality" aids a court in determining whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Marcus*, 687 F.3d at 594 (citation omitted).

To determine whether a named plaintiff is so different as to prevent a finding of typicality, a court must address three distinct concerns:  "(1) the claims of the class representative must be the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to

17

become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class." *Id.* at 598. The Third Circuit has set a "low threshold" for typicality, such that even "relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (quotes omitted).

Here, Plaintiffs' claims are typical of class members to the extent that the class members consist of Igberase's patients during and after his residency. All of the claims arise from the same legal theory: negligence. The claims also arise from a single course of conduct by ECFMG: the certification and subsequent (allegedly inadequate) investigation of his identity. ECFMG has not suggested any Plaintiff is subject to a unique defense. And nothing before the Court demonstrates that the Plaintiffs have incentives that are at odds with the class they seek to represent.

ECFMG notes that Igberase treated all of the Plaintiffs after entering private practice and obtaining his license and therefore suggests that Plaintiffs are not typical of patients that Igberase treated at Howard. That difference does not render Plaintiffs atypical, however. Patients treated

during and after residency all have claims based on the same course of ECFMG's conduct.

However, Plaintiffs' claims are not typical of class members to the extent that the class members consist of Igberase's patients at JSMC. Those patients can assert negligence claims based on ECFMG's initial certification of Akoda, but they cannot assert claims based on ECFMG's subsequent investigation because ECFMG did not conduct the investigation until after Igberase had treated those patients. Because the named Plaintiffs' claims are different from patients at JSMC in a meaningful way, the Court will exclude patients from JSMC from the class.

ECFMG also claims that Plaintiffs are not typical because they claim only to have suffered emotional damages, and some class members might have suffered physical harm at Igberase's hands as well. Again, these distinctions exist, but they do not overcome the fact that the Plaintiffs' claims arise from the same facts and legal theories as members of the class. To the extent any member of the class wants to assert additional claims against ECFMG based on other injuries that Igberase caused, she will have the opportunity to opt out of the class and assert those claims individually. And, nothing about the certification of a class in this case has any impact on a class member's ability to assert tort claims, including claims for other injuries, against Igberase himself.

19

### d.   Adequacy

The final 23(a) factor considers adequacy of both the Plaintiffs and counsel to represent the class. The "principal purpose of the adequacy requirement is to determine whether the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 393 (3d Cir. 2015). ECFMG does not challenge counsel's adequacy, and the Court finds that they have the requisite experience and skill necessary to represent the class.

As to the named Plaintiffs, the Court's inquiry focuses on whether the class representatives have conflicts of interest with the putative class members. *See New Directions Treatment Svcs. v. City of Reading*, 390 F.3d 313 (3d Cir. 2007). Only a "fundamental" conflict of interest will impact the adequacy analysis, meaning a conflict that arises because some class members benefitted from conduct that harmed other class members. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012). No such conflict exists here. No member of the class benefitted from Igberase's deception or from ECFMG's conduct. The most that can be said is that some members of the class might not have suffered any emotional damage. But no one benefitted.

20

ECFMG contends that Plaintiffs are not adequate because they sought to represent a class in a different case about Igberase and ultimately dismissed that case without prejudice. The Court does not know why they made that decision. Nor, apparently, does ECFMG because its argument just speculates about whether they might do the same in this case. Without far more context, the Court has no basis to make any determination about Plaintiffs' commitment to this case based on a decision that they made in another case.

ECFMG also contends that, during their depositions, Plaintiffs did not understand what ECFMG does. Yet none of the Plaintiffs demonstrated a complete lack of knowledge of the case. They just showed confusion about some details. A class representative's lack of knowledge about her case does not make her inadequate, as long as she has "minimal knowledge about the case and [can] make the requisite decisions required of a plaintiff." *In re Suboxone Antitrust Litig.*, MDL No. 2445, 2019 WL 4735520, at * 22 (E.D. Pa. Sept. 27, 2019). Finally, ECFMG claims that some members of the class might not have suffered emotional distress. However, that does not render the Plaintiffs inadequate or suggest a conflict between any Plaintiff and the class she seeks to represent.

### 3.     Rule 23(c)(4)/*Gates* factors

Having determined that Plaintiffs can satisfy the Rule 23(a) factors, the Court turns to the question of whether to certify an issues class under Rule 23(c)(4). "Rule 23(c)(4) both imposes a duty on the court to insure that only those questions which are appropriate for class adjudication be certified, and gives it ample power to treat common things in common and to distinguish the distinguishable." *Gates*, 655 F.3d at 272. "Courts frequently use Rule 23(c)(4) to certify some elements of liability for class determination, while leaving other elements to individual adjudication." *Suboxone*, 2019 WL 4735520, at *40 (quote omitted). An issue class need not "seek to prove all of [the] required liability elements through common evidence." *Id.* at *44. Instead, the question is whether one can sever the issues to be certified from the issues not to be certified. *Id.* at * 45.

Here, any duty that applied to ECFMG and ECFMG's potential breach of that duty focus on ECFMG's conduct, not on any individual member of the class. On the other hand, questions about causation and any damages focus on each individual class member.

### a.     Option A (liability class)

Plaintiffs' claims for negligence and NIED require them to prove the four elements of negligence: duty; breach; causation; and damages. *See Brewington for Brewington v. City of Phila.*, 199 A.3d 348, 355 (Pa. 2018);

*Phillips v. Cricket Lighters*, 841 A.2d 1000, 1010 (Pa. 2003). The Court cannot certify a class that encompasses elements of causation and damages because those issues are too individualized.

"[C]ausation . . . often require[s] individual proof." *Gates*, 655 F.3d at 264. Certainly, that is the case here. Indeed, it is all but impossible to separate questions of causation and harm from the individual damages that any plaintiff suffered. After all, prevailing on causation implies that a harm was indeed caused. *See, e.g.*, *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 465 (D.N.J. 2009) ("without a common injury, there can be no common causation, as there is nothing to cause.").

In Pennsylvania, courts use the "substantial factor" test to determine causation. *Ford v. Jeffries*, 379 A.2d 111, 114 (Pa. 1977) (citing to Restatement (Second) of Torts § 431). When evaluating whether negligent conduct is a substantial factor in causing the injury, courts consider the other factors that might contribute to the harm, the extent of the effect of those other factors, whether the actor's conduct created a force or series of forces which are continuous and active up to the time of the harm, or whether instead the actor created a situation harmless unless acted upon by other forces for which the actor is not responsible, and lapse of time between an actor's conduct and the harm. *See Hall v. Millersville Univ.*, 400 F. Supp. 3d 252, 273 (E.D. Pa. 2019) (citing Restatement (Second) of Torts § 433). These considerations render

causation a highly individualized inquiry, rather than common to all class members, and therefore disfavor certification of causation. *See, e.g., Barnes v. American Tobacco Co.*, 161 F.3d 127, 145 (3d Cir. 1998) (issues of causation had to be resolved individually); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 626 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

Given the individual nature of the causation and damages inquiry, the Court will not certify a class to tackle liability as a whole. There would be little efficiency to be gained from such a certification because the evidence in the class action portion of the case would overlap with the evidence in the individual portion of the case. Presenting the evidence twice would eliminate any efficiency. Also, a jury hearing the class action part of the case would have to hear and consider the same evidence as the jury (or juries) hearing the individual part of the case: whether Igberase's ability to pose as a doctor caused emotional harm and the extent of that harm. Because two juries would be hearing the same evidence, there would be a substantial risk (if not a certainty) of violating the Seventh Amendment's Reexamination Clause. *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144 (3d Cir. 1182) ("Seventh Amendment problems are inherent when separate juries determine fact of damage and the amount of damages.").

At the hearing, Plaintiffs argue that the Court can draw a distinction between harm, meaning "an invasion of a legally protected interest," and damages when considering the elements of negligence and then certify the liability elements. (Tr. at 32:21-34:5.) Plaintiffs' argument, however, suggests that an improper touching would be negligent, even if it did not cause any damages. That is wrong. A plaintiff cannot prove a negligence claim without proving damage, even if there was some invasion of a legally protected interest. *See Troutman v. Tabb*, 427 A.2d 673, 677 (Pa. Super. Ct. 1981).

### b.    Option B (specific issues)

Having rejected Option A, the Court turns to Plaintiffs' Option B, the certification of nine specific issues. Of the issues that Plaintiffs propose, the Court will not certify the Damages Issues for the reasons discussed above. In addition, Plaintiffs ask the Court to certify a class to answer the question of whether ECFMG faces liability for assisting Igberase in committing fraud, but that is not one of the claims in the case, a fact that Plaintiffs confirmed at oral argument. (Tr. at 7:12-8:24.) Because that question is not at issue in this case, the Court will not certify it.

The remaining issues, however, all relate to whether ECFMG had a relevant legal duty and whether it breached that duty. An analysis of the *Gates* factors reinforces that these issues are appropriate for certification. *First*, the questions of duty and breach favor issue certification because they

25

are questions of law and/or fact common to all class members and subject to common proof. All of the proposed class members are identical in terms of their legal relationship to ECFMG. In other words, barring any exceptional circumstances, which neither party has raised, whatever duty (if any) ECFMG owes to one proposed class member, ECFMG owes the same duty (if any) to the next proposed class member. Moreover, whether ECFMG has breached this duty is a common question of fact for each prospective class member, as the question looks to ECFMG's own conduct and not the conduct of individual class members. As such, these types of issue are amenable to certification.

Second, there are efficiencies to be gained by certifying a class on these issues because it will allow for a single trial with a single, preclusive determination about ECFMG's conduct, rather than the presentation of the same evidence about ECFMG again, and again, and again to separate juries. Moreover, there do not appear to be any realistic procedural alternatives to gain similar efficiencies. For example, the Court has considered whether non-mutual collateral estoppel might have all, or at least some, of the same impact and permit trial of these issues to a single jury. It would not because there is no guarantee it would apply. Indeed, if a court or jury ruled in ECFMG's favor, ECFMG could not use that decision in a subsequent case against a different plaintiff. *See Jean Alexander Cosmetics, Inc. v L'Oreal*

*USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (application of collateral estoppel requires, among other things, the party being precluded to have been represented in prior case). The Court explored other alternatives with the parties but found none.

*Third*, and finally, certification of a class on issues related to duty and breach will not trigger any of the problems about which courts must be mindful under *Gates*. Partial certification will not damage any class member's statutory or constitutional rights. There are no indivisible remedies that partial certification could impact. The individual proceedings that will remain, which will focus on causation and damages, need not impact each other. And, partial certification does not raise problems under the Seventh Amendment because the jury in any individual proceeding will not have to reexamine any of the evidence about ECFMG's conduct. It will instead take that conduct, and the first jury's determination about its legal significance, as a given and decide whether and to what extent it impacted a particular plaintiff.

In its Opposition, ECFMG points to the possibility of a statute-of-limitations defense as a reason for the Court not to certify an issues class. However, at oral argument, ECFMG conceded that it has no basis to claim that any member of the class is subject to such a defense. ECFMG just speculates that someone **might** be subject to the defense. (Tr. at 61:23-62:22.)

27

Such speculation is not enough. In any event, any statute of limitations defense would focus on when a class member was aware of the harm she suffered. So, if any class member's personal situation triggers the statute of limitations, then ECFMG can raise that issue in a proceeding that focuses on that person.

## IV. CONCLUSION

The Court's goal is to move this case efficiently, treating like things alike and different things differently. Here, that means certifying a class of Igberase's patients, beginning with his enrollment at Howard, on the issues of whether ECFMG owed class members or relevant third parties a duty and whether ECFMG breached those duties. The Court will therefore issue an appropriate Order, consistent with Rule 23(c)(1), certifying such a class.

**BY THE COURT:**


*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

March 23, 2020

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

<table>
<tr><td>

**MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL, and DESIRE EVANS, on behalf of themselves and all others similarly situated,**

*Plaintiffs,*

v.

**EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,**

*Defendant.*

</td><td>

Case No. 2:18-cv-05629-JDW

</td></tr>
</table>

## ORDER

AND NOW, this 23rd day of March, 2020, upon consideration of Plaintiff's Motion for Class Certification (ECF No. 32), all material submitted in support and opposition, and following oral argument, for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **GRANTED**.

It is **FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 23(c)(1)(B) the Court certifies the following class: "All patients examined or treated in any manner by Oluwafemi Charles Igberase (a/ka Charles J.

Akoda) beginning with his enrollment in a postgraduate medical education program at Howard University in 2007."

It is **FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 23(c)(4), the Court certifies the class with respect to the following issues: (1) whether Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") undertook or otherwise owed a duty to class members; (2) whether ECFMG undertook or otherwise owed a duty to hospitals and state medical boards, such that ECFMG may be held liable to class members pursuant to Restatement (Second) of Torts § 324A; (3) whether ECFMG breached any duty that it owed to class members; and (4) whether ECFMG breached any duty that it owed to hospitals and state medical boards.

It is **FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 23(g)(1), the Court appoints the following class counsel: Conrad O'Brien PC; The Cochran Firm; Janet Janet & Suggs LLC; Law Offices of Peter Angelos, P. C.; and Schochor Federico & Staton, PA.

It is **FURTHER ORDERED** that the Court will hold a status call with the Parties on March 31, 2020, at 10:00 a. m. EDT. Plaintiffs' counsel shall initiate the call and contact chambers at (267) 299-7320 when all counsel are on the line.

BY THE COURT:

*/s/ Joshua D.  Wolson*
JOSHUA D.  WOLSON, J.