**No. 20-8024**

In the United States Court of Appeals for the
Third Circuit

MONIQUE RUSSELL, JASMINE RIGGINS, ELSA M. POWELL,
and DESIRE EVANS, on behalf of themselves and all others similarly situated,
*Plaintiffs-Respondents*,

v.

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES,
*Defendant-Petitioner.*

On Petition for Permission to Appeal from the United States District Court for
the Eastern District of Pennsylvania, No. 2:18-cv-05629-JDW (Wolson, J.)

**RESPONSE IN OPPOSITION TO PETITION FOR PERMISSION TO
APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE
23(f)**

LAW OFFICES OF PETER G.
ANGELOS, P.C.
Paul M. Vettori
pvettori@lawpga.com
Danielle S. Dinsmore
ddinsmore@lawpga.com
One Charles Center
100 N. Charles Street, 20th Floor
Baltimore, Maryland 21201
Telephone: (410) 649-2000
Fax: (410) 649-2150

JANET, JANET & SUGGS, LLC
Patrick A. Thronson
pthronson@JJSjustice.com
Executive Centre at Hooks Lane
4 Reservoir Circle, Suite 200
Baltimore, MD 21208
Telephone: (410) 653-3200
Fax: (410) 653-9030

SCHOCHOR, FEDERICO AND
STATON
Jonathan Schochor
Phil Federico
Brent Ceryes
Lauren Schochor
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
Phone: (410) 234-1000
Fax: (410) 234-1010

CONRAD O'BRIEN PC
Nicholas M. Centrella
Howard M. Klein
Robin S. Weiss
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Telephone: (215) 864-9600

THE COCHRAN FIRM
Karen E. Evans, R.N., J.D.
David Haynes
kevans@cochranfirm.com
1100 New York Ave, N.W.
Washington, D.C. 20005
Telephone: (202) 682-5800

Z LAW, LLC
Cory L. Zajdel
clz@zlawmaryland.com
2345 York Rd. Suite B-13
Timonium, MD 21093
Telephone: (443) 213-1977

***Counsel for Plaintiffs-Respondents***

## CORPORATE DISCLOSURE STATEMENT

Not applicable. Plaintiffs-Respondents Monique Russell, Jasmine Riggins, Elsa M. Powell, and Desire Evans, on behalf of themselves and all others similarly situated, are all natural persons.

# TABLE OF CONTENTS

Table of Contents .................................................................................iv

Table of Authorities ..............................................................................v

Questions Presented ..............................................................................1

Introduction ...........................................................................................2

Factual Background ...............................................................................4

Standard of Review ...............................................................................8

I.    Granting ECFMG's Petition risks introducing confusion and disruption into settled Circuit precedent on issue-class certification, causing regression, not advancement, in the law.......................9

II.    ECFMG's choice of law arguments mischaracterize the district court's order.........................................................................................17

III.    ECFMG misstates and misapplies the typicality and adequacy requirements—the only Rule 23(a) findings it challenges.......................19

IV.    The district court's class certification order creates no inordinate settlement pressure ...........................................................................22

Conclusion.............................................................................................23

Certificate of Service............................................................................25

Certificate of Compliance with Rule 32(a) ........................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Behr Dayton Thermal Prods. v. Martin,*
  139 S. Ct. 1319 (2019) ..........................................................................12

*Castano v. Am. Tobacco Co.,*
  84 F.3d 734 (5th Cir. 1996) .................................................................12

*Chiang v. Venemen,*
  385 F.3d 256 (3d. Cir. 2004) ...............................................................11

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013).................................................................................10

*Gates v. Rohm and Haas Co.,*
  655 F.3d 255 (3d Cir. 2011) ......................................................... passim

*Gonzalez v. Corning,*
  885 F.3d 186 (3d Cir. 2018) .................................................................15

*Hammersmith v. TIG Ins. Co.,*
  480 F.3d 220 (3d Cir. 2007) .................................................................18

*Harris v. City of Philadelphia,*
  35 F.3d 840 (3d Cir. 1994) ............................................................ 15, 19

*In re Linerboard Antitrust Litig.,*
  305 F.3d 145 (3d Cir. 2002) ...................................................................8

*In re Lorazepam & Clorazepate Antitrust Litig.,*
  289 F.3d 98 (D.C. Cir. 2002).................................................................9

*In re Suboxone Antitrust Litig.,*
  421 F. Supp. 3d 12 (E.D. Pa. 2019).............................................. 16, 22

*In re Warfarin Sodium Antitrust Litig.,*
  391 F.3d 516 (2004)..............................................................................20

*Johnson v. SmithKline Beecham Corp.,*
  724 F.3d 337 (3d Cir. 2013) ...................................................................9

*Lacey v. Cessna Aircraft Co.,*
  932 F.2d 170 (3d Cir. 1991) .................................................................19

*Luppino v. Mercedes Benz USA,*
  718 F. App'x 143 (3d Cir. 2017) ................................................. 4, 7, 15

*Marcus v. BMW of N. Am., LLC,*
  687 F.3d 583 (3d Cir. 2012) .................................................................20

*Neale v. Volvo Cars of N. Am., LLC,*
  794 F.3d 353 (3d Cir. 2015) .................................................................10

*Newton v. Merrill Lynch, Pierce, Fenner & Smith. Inc.*,
   259 F.3d 154 (3d Cir. 2001) ...................................................8
*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).................................................................18
*Rodriguez v. Nat'l City Bank*,
   726 F.3d 372 (3d Cir. 2013) ........................................... 9, 23
*Romero v. Allstate Ins. Co.*,
   52 F. Supp. 3d 715 (E.D. Pa. 2014)....................................16
*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...............................................................10

## Rules

Federal Rule of Civil Procedure 23 ................................................. *passim*
Federal Rule of Appellate Procedure 5(c)(1).........................................26
Federal Rule of Appellate Procedure 32(a)(5).......................................26
Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) ...........................26

## Other Authorities

Alon Klement & Robert Klonoff Class Actions in the United States and Israel,
   19 *Theoretical Inquiries L.* 151 (2018)................................................13
Principles of the Law of Aggregate Litigation ................................ 11, 13

# QUESTIONS PRESENTED

1.    Whether the Court should consider overruling *Gates v. Rohm and Haas Co.*, 655 F.3d 255 (3d Cir. 2011) by holding, contrary to the present inter-Circuit consensus, that a class action for money damages must satisfy Rule 23(b)(3) in its entirety for an issue therein to be certified under Rule 23(c)(4)?

2.    Whether the Court should review the district court's class certification decision for abuse of discretion, based on:

    a.    alleged conflict with an unreported panel decision that never examines *Gates* and that ECFMG never cited below;

    b.    a choice-of-law determination that is fully reviewable at later stages of the case and not alleged to pose an insuperable obstacle to class certification;

    c.    findings on typicality and adequacy not alleged to be an abuse of discretion, where commonality is not disputed; or

    d.    emotional distress that allegedly will be caused by the dissemination of class notice, an argument not supported by authority and that was never presented below?

1

# INTRODUCTION

At the heart of this case is a single course of conduct, by a single defendant, central to the claims of all class members, which gives rise to the same issues of duty and breach as to each. The Educational Commission on Foreign Medical Graduates (ECFMG), Plaintiffs allege, negligently certified "John Nosa Akoda" (whose true name was Oluwafemi Charles Igberase) as eligible to apply to medical residency programs in the United States. ECFMG certified "Akoda" even though it knew he had repeatedly attempted to secure ECFMG certification by falsifying his identity, educational history, and professional credentials. Thereafter, it negligently assisted his applications to residency programs, state medical licensing boards, and hospital medical staffs under the Akoda identity, by representing "Akoda" was validly certified and by failing to disclose clear indications that "Akoda" was not who he said he was. Ultimately, Igberase, using the "Akoda" identity, committed sexual assault, battery, and boundary violations with female patients, who agreed to be intimately examined and treated by him based on the false premise he was a properly certified, credentialed, and licensed physician.

The district court appropriately recognized the centrality of ECFMG's conduct to all of Plaintiffs' claims, while appreciating the differences between plaintiffs with regard to the nature and extent of their damages. It granted Plaintiffs' motion to certify a class limited to issues of duty and breach, in a

thoroughly reasoned 28-page memorandum rendered after extensive briefing and a hearing. In doing so, it considered the necessary criteria under Federal Rule of Civil Procedure 23(a) and the criteria developed by this Court in *Gates v. Rohm and Haas Co.*, 655 F.3d 255 (3d Cir. 2011).

ECFMG cannot change the inescapable fact that the same questions of duty and breach certified by the district court are common to the claims of all class members, and are efficiently resolved on a classwide basis. Indeed, ECFMG does not challenge the district court's finding of commonality as to the certified issues. As the district court noted, "this case is not about Igberase's conduct; it is about ECFMG's conduct." Pet., Attach. (hereinafter "Ord.") at 11 (emphasis added). Resolution of the certified issues does not turn on any differences among the class members as to causation and damages.

The Petition also ignores that these questions can be resolved in one stroke through class treatment, and provides no alternative for efficiently and materially advancing the termination of this litigation. Instead, it presents ephemeral arguments concerning damages and choice of law, without explaining how these arguments undermine the appropriateness of certifying the issues of duty and breach, and without ever arguing that the district court abused its discretion in making its findings of fact as to the necessary elements of class certification.

And the Petition invites this Court—based on a strained reading of an inapposite, unreported panel decision never presented to the district court[1]—to embrace a rule rejected in *Gates*: that a proposed issue class action must satisfy Rule 23(b)(3) as to all issues in the action before Rule 23(c)(4) is applied. ECMFG gives no compelling reason for this Court to do so. And the "clarification" ECFMG seeks will regress, not advance, the law of class action certification, and create needless confusion in an already complicated area of class action procedure. Plaintiffs respectfully request that the Petition be denied.

## **FACTUAL BACKGROUND**

ECFMG's factual background section contains a concerning amount of inaccurate information. In the limited space provided, Plaintiffs will focus on correcting this information. For an extensive recitation of the factual background supporting their Motion for Class Certification, Plaintiffs respectfully refer the Court to the statement of facts contained within their Memorandum in Support of Plaintiffs' Motion for Class Certification. *See* Pet., Ex. 1 at 1–7.

> *"This case involves obstetrician/gynecologist John Nosa Akoda. . . . The district court's statement that John Akoda 'was not a doctor' is incorrect."* Pet. 4 & fn. 1.

---

[1] *Luppino v. Mercedes Benz USA*, 718 F. App'x 143 (3d Cir. 2017).

There is no "Dr. Akoda." There is no licensed OB/GYN named John Nosa Akoda. There is no evidence that a person properly bearing that name ever existed. As he admitted under oath in federal court, his real name is Oluwafemi Charles Igberase, not "Akoda." Pet., Ex. 9 at 8–9. Evidence of his medical education submitted to ECFMG was forced: Igberase's putative 1987 University of Ibadan (Nigeria) medical school diploma and "Akoda's" putative 1988 University of Benin medical school diploma involve almost the same underlying years of alleged medical training. Pet., Ex. 104:18–105:11, 106:24–107:8. Clearly, Igberase could not have simultaneously attended two different medical schools located over 180 miles apart.[2] In fact, ECFMG's corporate designee refused to take a position on whether "Akoda" ever graduated from medical school. Pet., Ex. 12 at 86:22–87:5; 107:14–108:15.

> *"In November 2016, following a two-year investigation by the U.S. Attorney's office, Dr. Akoda pleaded guilty to misuse of a Social Security number."*

The Petition grossly minimizes "Akoda's" misconduct. In June 2016, law enforcement officials executed search warrants at "Akoda's" residence, medical office and vehicle. Pet. Ex 9 at 9. As "Akoda" later admitted in his plea agreement, they found a false driver's license, "a false Social security card . . . a false Nigerian

---

[2] *See* https://tinyurl.com/ycvrpo6w.

passport . . . a false United States visa" and "fraudulent or altered documents related to immigration, medical diplomas, medical transcripts, letters of recommendation, and birth certificates." *Id.* at 9. He was charged with six felony counts,[3] but, as stated, ultimately agreed to plead guilty to one count of Social Security fraud.

> "Following an investigation—in which Dr. Akoda addressed those concerns [that ECFMG had expressed about his truthfulness] and provided supporting hard-copy documents . . . ECFMG concluded that there was insufficient evidence of any discrepancy."

ECFMG omits important facts showing ECFMG directly enabled Igberase, using the "Akoda" identity, to intimately examine hundreds of female patients at Howard University and in Prince George's County, Maryland without informed consent—all of which could have been avoided had ECFMG acted reasonably in detecting, preventing, and correcting "Akoda's" numerous, obvious acts of fraud.

The ECFMG executive most familiar with the Akoda matter—William Kelly—wrote in a not-for-file memorandum that he "believed" that "Akoda" and Igberase were the same person. Pet., Ex. 8. (ECFMG had previously revoked Igberase's ECFMG certification for misrepresenting his identity.) Pet., Ex. 9 at 8. He wrote that Jersey Shore Medical Center's (JSMC's) residency program, in

---

[3] *See* Superseding Indictment, ECF. No. 37, United States v. Oluwafemi Charles Igberase, No. 8:16-cv-00277-PWG (D. Md. Oct. 19, 2016).

which Akoda was then enrolled, shared Kelly's belief. *Id.* Kelly noted "Akoda's"

written admission to using Igberase's Social Security number in connection with

his ECFMG application. *Id.* Kelly noted he "sent Igberase an email . . . and who

should respond, but Akoda!" *Id.* Yet Kelly and other ECFMG executives and staff

chose not to apprise the ECFMG Medical Education Credentials Committee or

Board of Directors of the matter until 2016. Pet., Ex. 12 at 171:11–21. ECFMG

took no additional action to determine whether Igberase and "Akoda" were the

same person. *Id.* at 174:5–11.

In 2006, Igberase, using the "Akoda" identity, attempted to use ECFMG's

electronic residency application system (ERAS) to assist with his application for a

graduate resident program at Howard University Hospital. Kelly sought to contact

the purported authors of three letters of reference submitted by "Akoda" and verify

their authenticity, because he had concerns about Akoda's credibility, *id.* at 95:20–

96:11. He received no response. *Id.* at 96:17–18.

ECFMG failed to inform any hospital or the public of Akoda's misconduct

and false representations, until contacted by law enforcement in approximately

2015. Pet., Ex. 12 at 181:9–16. In short, ECFMG negligently enabled "Akoda" to

fraudulently hold himself out as a legitimately credentialed medical doctor, to

hospitals, medical boards, his patients, and the public, for nearly a decade.

**STANDARD OF REVIEW**

Although an appellate court has the discretion "to grant or deny [Rule 23(f)] petitions 'on the basis of any consideration that the court of appeals finds persuasive," this Court and the Advisory Committee on Civil Rules have identified three primary circumstances warranting review: "(1) the possible case-ending effect of an imprudent class certification decision (the decision is likely dispositive of the litigation); (2) an erroneous ruling; or (3) facilitat[ing] development of the law on class certification." *Newton v. Merrill Lynch, Pierce, Fenner & Smith. Inc.*, 259 F.3d 154, 165 (3d Cir. 2001), *as amended* (October 16, 2001).

This Court situates its consideration of these principles within the general framework of appellate deference to the district court's discretion in resolving class certification motions. *Id.* The Petition nowhere recognizes that this Court "review[s] a district court's grant of class certification under an abuse of discretion standard." *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 149 (3d Cir. 2002) (citation omitted). A district court abuses its discretion when "'its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *In re Hydrogen Peroxide Antitrust Litig.*, 552. F.3d 305, 313 (3d Cir. 2008) (citation omitted). "Clearly erroneous" signifies a reviewing court can reverse a factual finding only if the court is "'left with the

definite and firm conviction that a mistake has been committed.'" *Johnson v.*

*SmithKline Beecham Corp.*, 724 F.3d 337, 345 (3d Cir. 2013) (citation omitted).

Granting a Rule 23(f) petition "is discouraged when the natural course of

litigation will provide the moving party with an adequate remedy, or when the

certification decision was routine and easily resolved." *Rodriguez v. Nat'l City*

*Bank*, 726 F.3d 372, 376–77 (3d Cir. 2013). Appellate courts rarely grant review

under Rule 23(f) when a case neither involves a "death-knell" for the litigation nor

a novel area of law. *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98,

105 (D.C. Cir. 2002). This is due to the "sheer number of class actions, [and] the

district court's authority to modify its class certification decision [under Rule

23(c)(1)]." *Id.*

## I.      Granting ECFMG's Petition risks introducing confusion and disruption into settled Circuit precedent on issue-class certification, causing regression, not advancement, in the law.

ECFMG contends the district court failed to consider the predominance and

superiority requirements of Rule 23(b)(3) in the context of a Rule 23(c)(4) issue

class certification, and that the interplay between the two rules poses a novel

question of law. In fact, the district court scrupulously applied established Circuit

precedent on issue class certification, principally *Gates v. Rohm and Haas Co.*, 655

F.3d 255 (3d Cir. 2011) It appropriately refused to consider whether the claim as a

whole satisfies Rule 23(b)(3). Instead, it analyzed the proposed issue classes using

the *Gates* factors, which it understood correctly to incorporate considerations of predominance and superiority. ECFMG's recommended "clarification," in which a district court should apply Rule 23(b)(3)'s predominance and superiority requirements to an entire claim (a path rejected in *Gates*), then apply them again in the context of the *Gates* factors, will cause needless doctrinal confusion and duplication.

According to the familiar standard, class certification "is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (citation omitted). "The same analytical principles govern Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). A class certification order that leaves damages to be calculated on an individual basis complies with Rule 23. As this Court held in considering *Comcast*, "[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374–75 (3d Cir. 2015) (citation omitted).

In *Gates*, this Court adopted the non-exclusive list of factors from the American Law Institute's *Principles of the Law of Aggregate Litigation* as a guide to determining whether to certify a motion for class certification brought under Rule 23(c)(4). The factors are:

the type of claim(s) and issue(s) in question; the overall complexity of the case; the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives; the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy; the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s); the potential preclusive effect or lack thereof that resolution of the proposed issue class will have; the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues; the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others; and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

See Gates v. Rohm & Haas Co., 655 F.3d 255, 274 (3d Cir. 2011) (citing

Principles of the Law of Aggregate Litigation §§ 2.02–05 (2010)). These factors

"should guide courts as they apply Fed. R. Civ. P. 23(c)(4) 'to treat common things

in common and to distinguish the distinguishable.'" Id. (quoting Chiang v.

Veneman, 385 F.3d 256 (3d Cir. 2004)).

    In formulating the Gates criteria, this court declined to take either side in

what it perceived as a circuit split on the relationship between Rules 23(b)(3) and

(c)(4). One side of the split—ECFMG's "narrow view" of the relationship between

Rules 23(b)(3) and (c)(4)—holds that predominance and superiority must be

satisfied for the entire case before certification pursuant to Rule 23(c)(4) can even

occur. This Court unmistakably rejected that view:

> Some appellate courts have viewed Rule 23(c)(4) as a "housekeeping rule" allowing common issues to be certified only when the cause of action, taken as a whole, meets the predominance requirement. *See Castano v. Am. Tobacco Co.,* 84 F.3d 734, 745 n. 21 (5th Cir. 1996). Others have allowed certification of issue classes even if common questions do not predominate for the cause of action as a whole. [Citations omitted].

> <u>Rather than joining either camp in the circuit disagreement</u>, we believe the considerations set forth in *Hohider* and more recently in the Final Draft of the ALI's Principles of Aggregate Litigation provide the most sound guidance in resolving this complicated area of class action procedure.

*Gates*, 655 F.3d at 272–73 (emphasis added).

The so-called circuit split identified by *Gates* no longer exists. The United

States Supreme Court has denied certiorari on the four occasions it has considered

a petition from class action defendants that advances the view of Rule 23(c)(4)

class certification espoused by ECFMG.[4] And *Castano* has been unmistakably

eclipsed by subsequent developments. There is now "universal agreement that the

predominance requirement of Rule 23(b)(3) does not apply when certification is

---

[4] See Healthplan Servs., Inc. v. Gunnells, No. 03-1282 (filed March 11, 2004); Pella Corp. v. Saltzmann, No. 10-355 (filed Sept. 13, 2010); Merrill Lynch, Pierce, Fenner & Smith Inc. v. McReynolds, No. 12-113 (filed July 25, 2012); *Behr Dayton Thermal Prods. v. Martin*, 139 S. Ct. 1319 (2019).

only for an issues class." Alon Klement & Robert Klonoff, Class Actions in the United States and Israel, 19 *Theoretical Inquiries L.* 151, 161 (2018).[5]

Regardless, the *Gates* criteria already incorporate the elements of predominance and superiority, contextualized within the framework of an issue class. The *Gates* criteria are based on "the premise that both the <u>predominance</u> requirement of Rule 23(b)(3) and the authorization for issue classes in Rule 23(c)(4) are worthwhile components of the law of aggregate litigation." *Principles of the Law of Aggregate Litigation* § 2.02 (2010) cmt. a (emphasis added). The criteria require a district court to consider whether a proposed issue class will "materially advance the resolution of multiple civil claims by addressing the core of the dispute in a manner <u>superior to other realistic procedural alternatives</u>, so as to generate significant judicial efficiencies." *Id.* § 2.02 & cmt. a (emphasis added).

The district court clearly understood that the *Gates* factors encompass predominance and superiority considerations. Pet., Ex. 23 at 29:9–24. The district court also recognized, at the hearing and in its memorandum opinion, the superiority concerns of material advancement and efficiency that are reflected in

---

[5] *See also* Advisory Comm. on Civil Rules, Agenda Book at 91, https://www.uscourts.gov/sites/default/files/2015-11-civil-agenda_book.pdf (noting the "circuits seem to be in accord" about the propriety certifying issue classes even when the entire action might not satisfy Rule 23(b)(3)).

the *Gates* factors, and appropriately considered (and ultimately rejected) the possibility it was certifying overly narrow issues. *See* Pet., Ex. 23 at 32:9–33:9.

The district court identified, discussed, and applied the factors set forth in this Court's opinion in *Gates*. Ord. at 7–8, 25–28. As mentioned, these factors include Rule 23(c)(4)-specific predominance and superiority considerations. After a persuasive analysis, the district court concluded there were great efficiencies to be gained through classwide treatment of duty and breach, which would have preclusive effect. As below, ECFMG identifies no reasonable alternative to efficiently resolving Plaintiffs' claims.

ECFMG criticizes the length of the district court's discussion of the *Gates* factors, yet ECFMG's own analysis of the factors in its briefing was less than two pages. *See* Pet., Ex. 13 at 24–25. Contrary to ECFMG's contentions, the district court appropriately considered the risk of reexamination and the type of claims at issue pursuant to *Gates.* In fact, it sided with ECFMG on these criteria in declining to certify liability for class treatment. Ord. at 22–25. The district court then concluded after additional analysis that these criteria did not pose an obstacle to certifying issues of duty and breach, and that the other *Gates* factors indicated the wisdom of doing so. Ord. at 25–28.

The district court declined ECFMG's invitation to commit error by applying Rule 23(b)(3) to the entire claim before applying Rule 23(c)(4). Ord. at 7–9. As

discussed, the Third Circuit in *Gates*, along with the other circuits that have

considered the issue, now eschew ECFMG's preferred approach. Since *Gates*, this

Court has reaffirmed that "that the appropriateness of certifying a Rule 23(c)(4)

class is analytically independent from the predominance inquiry under Rule

23(b)(3)." *Gonzalez v. Corning*, 885 F.3d 186, 202 (3d Cir. 2018), *as amended*

(Apr. 4, 2018).

In seeking to secure review of the district court's decision, ECFMG

contends the district court's decision is inconsistent with an unreported opinion

ECFMG never cited to the district court, *Luppino v. Mercedes Benz USA*, 718 F.

App'x 143 (3d Cir. 2017).

First, ECFMG does not attempt to explain its failure to cite *Luppino* to the

district court. The argument ECFMG advances in connection with this case is

therefore waived. *See, e.g.*, *Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d

Cir. 1994).

Second, *Luppino*, an unreported panel decision, cannot overrule *Gates*, and

would generally not even be cited by this Court. *See* Third Circuit Internal

Operating Procedures 5.7, 9.1. *Gates* indisputably rejected ECFMG's obsolete

conception of the relationship between Rules 23(b)(3) and (c)(4). And in contrast

to *Luppino*, the *Gates* court considered whether class certification was appropriate

under Rule 23(c)(4) even after affirming the denial of class certification under Rule

23(b)(3). A failure to satisfy claim-wide predominance thus does not bar issue

certification.

Third, *Luppino*'s analysis does not help resolve the issues at stake in this

case. The opinion does not discuss *Gates*. Its affirmance of an order denying class

certification hinged on a failure to satisfy commonality, a Rule 23(a) element.

Here, ECFMG does not challenge the Court's finding of commonality.

ECFMG fails to explain how the district court is an outlier in its approach to

Rules 23(b)(3) and (c)(4). Its reliance on two district court decisions—*Romero v.*

*Allstate Ins. Co.*, 52 F. Supp. 3d 715 (E.D. Pa. 2014), and *In re Suboxone Antitrust*

*Litig.*, 421 F. Supp. 3d 12 (E.D. Pa. 2019), *appeal filed*, No. 19-3640—is wholly

misplaced. *Romero* never mentions Rule 23(b)(3), and the *Romero* court examined

the *Gates* factors without first determining whether the action as a whole satisfied

Rule 23(b). *Id.* at 725–38. The *Suboxone* court did not have occasion to examine

the interplay between Rules 23(b)(3) and (c)(4). It certified a class of purchasers as

to issues of anticompetitive conduct under *Gates*, after it declined to certify the

claims of the class as a whole under Rule 23(b)(2). *Id.* at 68–78. This belies

ECFMG's argument that the entire claim must satisfy Rule 23(b) in order for an

issue to be certified under Rule 23(c)(4).

Finally, ECFMG suggests this Court should clarify whether class notice is

required for an action certified under Rule 23(c)(4). Here, the parties do not dispute

that notice should occur. *See* Ex. 3 at 1–2. The Court should not grant review to render an advisory opinion.

## II.    ECFMG's choice of law arguments mischaracterize the district court's order.

ECFMG contends the district court "overlooked" potential conflicts of law in this case, but fails to identify any potential conflict of law that the court did not specifically consider and reject. Pet. at 19. The district court examined the elements of Plaintiffs' negligence and negligent infliction of emotional distress claims, and assessed whether or not there was a conflict of law among the implicated states. After an examination of law in Virginia, the District of Columbia, Maryland and Pennsylvania, the Court concluded that no conflict exists. Ord. at 10–12.

ECFMG incorrectly claims that in rejecting its choice of law arguments, the Court "relied" on the fact that "'the parties have not identified any [variations]'" in state law, and thereby misallocated the burden of proof. Pet. at 18 (quoting Ord. at 11). The truth is otherwise. Plaintiffs' briefing argued that Pennsylvania law applied to the certified issues. *See* Ex. 2 at 13–14; Pet., Ex. 1 at 22–23. The court discussed potential conflicts of law with the parties at length at the hearing. Pet., Ex. 23 at 40–47. In its memorandum opinion, the district court considered each of the legal and factual issues to be certified, analyzed any potential conflict of law

between each of the potential states, and found that no conflict existed. Ord. at 9–12.

Even in the event a conflict of law existed with respect to Plaintiffs' claims, the relative interests of the other implicated states "would be far weaker than Pennsylvania's interest," and Pennsylvania law would apply. *Id*. at 10 (citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229–30 (3d Cir. 2007). As the district court observed, "<u>this case is not about Igberase's conduct; it is about ECFMG's conduct.</u>" Ord. at 11 (emphasis added). The relevant acts and omissions of ECFMG all took place in Pennsylvania; where "Akoda" encountered class members is irrelevant.

ECFMG's reliance on *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 802 (1985) is misplaced. There, the United States Supreme Court considered whether conflicts of law prevented a Kansas trial court from certifying a nationwide class of 28,000 members. *Id*. Kansas had no relation to the controversy apart from the fact that a small number of the leases were in Kansas. *Id.* at 814–15. The Court ultimately found that there were substantive conflicts of law and Kansas law could not be held applicable to all claims. *Id*. at 822.

Here, claims are asserted against a Pennsylvania corporation, for acts and omissions that took place exclusively in Pennsylvania. Pennsylvania has a strong interest in regulating the conduct of its domiciliary corporations by applying its

substantive tort law, and other jurisdictions have no interest in applying their own law when doing so would limit their citizen's right to recover, for the benefit of a foreign corporation. *See Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187–88 (3d Cir. 1991). Pennsylvania law applies.

Even if the district court later determined that other state's law should be applied to resolve the certified issues, the district court can create subclasses under Rule 23(c)(5) to do so, as Plaintiffs argued below. *See* Ex. 2 at 14.

Finally, ECFMG references "problems under the Commerce Clause," without any further explanation or argument. ECFMG never briefed or argued this issue below; thus, it is waived. *See, e.g., Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994). The claims asserted in this case do not concern the physician-patient relationship. They simply seek to hold ECFMG accountable for negligence committed in Pennsylvania.

## III.  ECFMG misstates and misapplies the typicality and adequacy requirements—the only Rule 23(a) findings it challenges.

ECFMG next contends that this case should not have been certified on the narrow issues set forth by the district court, because there may be differences in damages between class members. It claims these differences defeat the requirements of typicality, adequacy or superiority, despite the fact that issues of damages are not among those certified under the district court's order.

The representative Plaintiffs are four patients of "Akoda" who, as with every other class member, entrusted "Akoda" with their medical care and treatment. Their claims are typical of the class certified by the district court. The typicality prong is normally met where "claims of representative Plaintiffs arise from the same alleged wrongful conduct." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (2004); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012) ("If a Plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class.")

Here, the named Plaintiffs, like the members of the class, were obstetrical and gynecological patients who consented to receive care and treatment from "Akoda" on the false premise that he was a properly certified and qualified OB/GYN who had obtained all necessary credentials and certifications required of physicians practicing in the United States. Although the individual class members suffered injury under different circumstances, the named Plaintiffs' and class's claims "arise from the same alleged wrongful conduct"[6] of ECFMG and are "based on the same legal theory."[7]  Typicality is satisfied here.

---

[6] *In re Warfarin*, 391 F.3d at 532.

[7] *Marcus*, 687 F.3d at 598.

Additionally, the determination of damages is not among those claims certified by the district court. The certified issues of duty and breach are common to all claims of class members, and there are no conflicts of interests between the representative Plaintiffs and the class. Thus, there is no harm or prejudice to any class member should this matter proceed as a class action.

ECFMG suggests that certification may be inappropriate because class members could suffer emotional distress upon receipt of class notice. This argument was never raised before the district court, and is therefore waived. ECFMG cites no authority indicating how this argument can defeat class certification.

ECFMG then suggests that to the extent class members were the victims of medical malpractice, a class action might somehow preclude them from asserting their claims. Pet. 22. ECFMG never raised this argument below. It is waived. ECFMG also does not explain why this class action, which asserts only emotional distress damages against ECFMG, in any way forecloses Plaintiffs from recovering in a separate medical negligence claim for emotional distress arising out of bodily injury. The merely theoretical possibility that some class member may desire to file a medical negligence claim against ECFMG relating to "Akoda's" conduct creates no conflict of interest and does not impair typicality or adequacy of the class representatives.

**IV.** **The district court's class certification order creates no inordinate settlement pressure.**

For this Court to grant review on the basis that class certification places inordinate pressure on a defendant to settle, there should be some showing that the pressure is illegitimate and premised on nonmeritorious claims. ECFMG has not made this showing. Its arguments that Plaintiff's claims are "nonmeritorious," "weak," or "extortion[ate]" are unsupported invective. ECFMG belittles Plaintiffs' emotional distress claims as based on a "highly questionable premise." Pet. 21. Yet it also argues class certification risks "ruinous liability." *Id.* at 23. ECFMG cannot have it both ways.

ECFMG also fails to show the district court's certification order risks financial Armageddon. Such a conclusion is not remotely plausible. The district court certified only duty and breach, leaving damages for resolution on an individualized basis (e.g., through bellwether proceedings). This differs from *Newton*, relied on by ECFMG, where the proposed class involved thousands of investors who were parties to hundreds of millions of trades. Here, the class size is nowhere near that number. Pet., Ex. 1 at 11–12.

ECFMG has offered no evidence it is financially incapable of paying a judgment. In fact, its Corporate Disclosure Statement represents that its insurer "AIG may be liable to satisfy all or part of a possible judgment." Pet. at i.

22

ECFMG's most recent tax return (Form 990), from fiscal year 2018, is available at
https://tinyurl.com/y7m6pcf6. It shows total revenue of $89.9 million and net
assets of $151.8 million. *Id.* at 1. In short, this Court should not conclude that the
certification order creates "inordinate . . . pressure . . . to settle." *Rodriguez v. Nat'l
City Bank*, 726 F.3d 372, 376-77 (3d Cir. 2013) (citation omitted) (emphasis
added). The ordinary pressure to settle that a ruling on class certification creates,
without more, is insufficient for review.

Finally, ECFMG suggests the Order could open the door to class actions in
connection with treatment rendered by an international medical graduate (IMG).
ECFMG's liability arises solely from its own direct negligence. Plaintiffs have
never claimed that ECFMG could be held liable on a purely vicarious basis for
poor medical care provided by an IMG. There is no reason to conclude that
ECFMG could be held vicariously liable for the negligence of IMGs, where
ECFMG does not employ IMGs and is not even a healthcare provider.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that ECFMG's Rule
23(f) Petition be denied.

Dated: <u>April 20, 2020</u>                                      Respectfully submitted,

*[signatures on following page]*

23

CONRAD O'BRIEN PC

*/s/ Nicholas M. Centrella*
Nicholas M. Centrella, Esquire
Howard M. Klein, Esquire
Robin S. Weiss, Esquire
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Telephone: (215) 864-9600
ncentrella@conradobrien.com

JANET, JANET & SUGGS, LLC

Patrick A. Thronson
Executive Centre at Hooks Lane
4 Reservoir Circle, Suite 200
Baltimore, MD 21208
Telephone: (410) 653-3200
Fax: (410) 653-9030
pthronson@JJSjustice.com

SCHOCHOR, FEDERICO AND
STATON

Jonathan Schochor
Lauren Schochor
Brent Ceryes
Phil Federico
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
Phone: (410) 234-1000
Fax: (410) 234-1010

LAW OFFICES OF PETER G.
ANGELOS, P.C.

Danielle S. Dinsmore
Paul M. Vettori
One Charles Center
100 N. Charles Street, 20th Floor
Baltimore, Maryland 21201
Telephone: (410) 649-2000
Fax: (410) 649-2150

THE COCHRAN FIRM

Karen E. Evans, R.N., J.D.
David Haynes
1100 New York Ave, N.W.
Washington, D.C. 20005
Telephone: (202) 682-5800

Z LAW, LLC

Cory L. Zajdel
2345 York Rd. Suite B-13
Timonium, MD 21093
Telephone: (443) 213-1977

*Attorneys for Plaintiffs-Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2020, the foregoing Response in Opposition to Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) was filed with the Clerk of Court for the U.S. Court of Appeals for the Third Circuit through the Court's CM/ECF system. I also certify that copies of the foregoing Response in Opposition to Petition for Permission to Appeal Pursuant to Federal Rule of Civil Procedure 23(f) were served by email upon the following counsel for Defendant-Petitioner Educational Commission for Foreign Medical Graduates:

William R. Peterson
Morgan, Lewis & Bockius, LLP
1000 Louisiana St., Suite 400
Houston, TX 77002

Brian W. Shaffer
Matthew D. Klayman
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

/s/ Nicholas Centrella
Nicholas M. Centrella

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.    This filing complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c)(1), because it contains 5,197 words, excluding the parts of the filing exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This filing complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this filing has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times 14-point font.

/s/ Nicholas Centrella
Nicholas M. Centrella